# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **Alicia BELTRAN** )<br> )<br> Applicant, )<br> )   **Docket No.** _____<br> vs. )<br> )<br> **Jamie LOENISH, in his official capacity as** )<br> **Executive Director of the Casa Clare** )<br> **Treatment Center; Jim STRACHOTA,** )<br> **in his official capacity as Director of Human** )<br> **Services for Washington County, WI;** )<br> **Mark D. BENSEN, in his official capacity as** )<br> **District Attorney for Washington County,** )<br> **WI; the WASHINGTON COUNTY** )<br> **CIRCUIT COURT; and John DOE, in his** )<br> **official capacity as immediate custodian** )<br> **of Applicant Alicia Beltran,** )<br> )<br> Respondents. ) | |

**APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 BY A PERSON IN CUSTODY**

**PRELIMINARY STATEMENT**

1. Applicant Alicia Beltran is a 28-year old female citizen of the United States. She is currently being held in state custody at Casa Clare Women's Facility, 201 South Glenridge Court, Appleton, WI, 54914. Ms. Beltran was involuntarily detained and held at Casa Clare, a drug treatment facility, by order of Family Court Commissioner Dolores Bomrad on July 18, 2013. Commissioner Bomrad ordered Ms. Beltran committed for the stated purpose of mandatory drug treatment on an in-patient basis pursuant to 1997 Wisconsin Act 292 (hereinafter "the Act"), WIS. STAT. ANN. § 48.133 *et seq*. on information that Ms. Beltran was pregnant and had taken Suboxone, a controlled substance. Ms. Beltran was then 15 weeks pregnant. At this time, Ms. Beltran has been in custody continuously for a period of ten weeks and is awaiting a status hearing on October 7, 2013 and a jury trial set for October 29-30, 2013, on a petition for Child in Need of Protective Services (CHIPS).

3. The Act gives the courts of Wisconsin original jurisdiction over fertilized eggs, embryos, fetuses, and pregnant women at all stages of pregnancy where the pregnant woman "habitually lacks self-control" in the use of alcohol or controlled substances "to a severe degree" such that there is a "substantial risk" that the health of the egg, embryo, fetus, or child upon birth will be "seriously affected." WIS. STAT. ANN. § 48.133. On the basis of this jurisdiction, the State is empowered under the Act to appoint a guardian ad litem to represent the best interests of the "unborn child"; arrest the pregnant woman and place her in physical custody for the length of her pregnancy; subject the woman to involuntarily medical examinations, testing, and treatment; require the woman to stand trial for negligence with possible deleterious effects to her right to

parent her child once born; and all without proper procedural safeguards or a sufficient government interest under all constitutional standards of review.

4. Current detention of Ms. Beltran is in violation of numerous provisions under the United States Constitution, including Ms. Beltran's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. U.S. CONST. AMENDS. IV, V, VI, VIII, & XIV.

5. For the reasons detailed herein, Applicant Ms. Beltran respectfully requests that this Court issue a writ of habeas corpus on the basis that the Act is unconstitutional both on its face and as applied. Ms. Beltran requests the relief of declaratory judgment, as well as temporary, preliminary, and permanent injunctions against enforcement of the Act such that she may be immediately released from State custody and protected against further detention or court proceedings relative to her pregnancy and/or medical health.

## PARTIES

6. Ms. Alicia Beltran is a 28 year old female citizen of the United States. She resides in Jackson, Wisconsin but is currently being held involuntarily at Casa Clare, a drug treatment facility for women in Appleton, Wisconsin. At the time of this filing, Ms. Beltran is approximately 25 weeks pregnant.

7. Respondent Jamie Loehnis is named in his official capacity as the Executive Director of Casa Clare. In this capacity, he is the immediate legal custodian of Ms. Beltran. Mr. Loehnis' business address is 201 South Glenridge Court, Appleton, WI, 54914.

8. Respondent Jim Strachota is named in his official capacity as the Director of Human Services for Washington County, WI. The Washington County Department of Human Services is the agency charged with enforcement of the Act and under whose authority Ms. Beltran has

been subjected to arrest and detention. As Director of that agency, Respondent Stratchota is therefore Ms. Beltran's legal custodian.

9. Respondent Mark D. Bensen is named in his official capacity as District Attorney for Washington County, WI. The District Attorney's Office is responsible for the CHIPS petition filed against Ms. Beltran, pursuant to which Ms. Beltran has been arrested and currently stands detained. Respondent Bensen is thus also responsible for Ms. Beltran's custody.

10. Respondent Washington County Circuit Court is named because Ms. Beltran was ordered detained and remains in custody following order of Washington County Circuit Court Commissioner Dolores Bomrad. The Washington County Circuit Court is correspondingly also a legal custodian of Ms. Beltran.

11. Applicant Ms. Beltran names John Doe in his official capacity as immediate custodian in effort to comply with the "immediate custodian" rule of Rumsfeld v. Padilla, 542 U.S. 426 (2004). Ms. Beltran is being detained by a private institution that, on information and belief, is a non-profit with a non-governmental director, Mr. Loehnis, and established federal law provides no clear guidance on naming the immediate custodian in cases where the most logical choice is not a state official. Ms. Beltran has made every effort to identify and name the proper parties to this action, but out of an abundance of caution, names John Doe in the event that discovery suggests an additional or more proper respondent. Ms. Beltran should not be denied access to justice because of the eccentricities of this apparent case of first impression.

## JURISDICTION

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, § 9, cl. 2 of the United States Constitution; the All Writs Act, 28 U.S.C. § 1651; and for injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Ms.

4

Beltran's detention constitutes a "severe restraint[] on individual liberty" such that Ms. Beltran is "in custody" in violation of the laws of the United States. See Hensley v. Mun. Court, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241.

## EXHAUSTION OF REMEDIES

13.   The Seventh Circuit has stated that, "[i]n the interest of comity between federal and state courts, the doctrine of exhaustion of state remedies has developed. It applies to pre-trial, as well as post-trial, habeas corpus petitions." Neville v. Cavanaugh, 611 F.2d 673, 675 (7th Cir. 1979). Under § 2241, the exhaustion requirement is not statutory but judicially-crafted, meaning that "it is to be applied with due regard for its underlying purpose and for considerations that may in particular cases counsel for a waiver." Glisson v. United States Forest Service, 55 F.3d 1325, 1327 (7th Cir. 1995). Exceptions to the exhaustion requirement are available in cases of "peculiar urgency." Irvin v. Dowd, 359 U.S. 394, 405 (1959). In this Circuit, peculiar urgency has been found where state processes would pose "excessive delay", United States ex rel. Pisciotti v. Cooper, 790 F. Supp. 178, 181 (N.D. Ill. 1992), or in light of "circumstances rendering [State] process ineffective," Gray v. Greer, 707 F.2d 965, 967 (7th Cir. 1983).

14.   Ms. Beltran has not exhausted state proceedings, but this is an exceptional case of peculiar urgency. Ms. Beltran was approximately 25 weeks pregnant at the time of filing, and is due to give birth in mid-January 2014. In the only case that is directly parallel to Ms. Beltran's that has worked its way through the relevant state system, the Wisconsin Supreme Court issued an opinion over 19 months after initiation of state proceedings. See State ex rel. Angela M.W. v. Kruzicki, 561 N.W.2d 729, 733 (Wis. 1997) (decided April 22, 1997 on Petitioner's challenge to detention and pending CHIPS petition filed September 13, 1995). Similarly, the California court system took approximately 18 months to finally determine an analogous challenge. See In re

5

Steven S., 126 Cal. App. 3d 23 (Cal. App. 1981). Exhaustion of State remedies would thus entail both "excessive delay" and futility, since Ms. Beltran will have given birth and been released from state custody long before the state process is through. The attendant harms of Ms. Beltran's detention and continuing while pregnant demand immediate remedy which only this Court can provide.

15. State remedies are also inadequate in this case because they would force Ms. Beltran through the expense and indignity of an unconstitutional trial. The Supreme Court has recognized in the double jeopardy context that the exhaustion requirement is not appropriate where a petitioner's challenge to prosecution is "collateral to, and separable from" the merits of the pending trial. Abney v. United States, 431 U.S. 651, 659 (1977). As in a claim of double jeopardy, Ms. Beltran is here "contesting the very authority of the Government to hale [her] into court to face trial[.]" She is raising numerous constitutional claims to challenge her detention, the pending CHIPS petition against her, and the Wisconsin statute authorizing both. Id. Also in the double jeopardy context, this Circuit has recognized the emotional and financial hardship that attends trial, Lovinger v. Circuit Court of the 19th Judicial Circuit, Lake County, Ill., 845 F.2d 739, 743 (7th Cir. 1988) – if forced to exhaust state remedies, Ms. Beltran would face these same hardships, plus the added insult of further intrusion into her constitutional rights to privacy, due process, equal protection, and to be free of cruel and unusual punishment, among others. Just as in the double jeopardy context, exhaustion is here improper because further state proceedings would themselves impose fresh constitutional violations.

16. Exhaustion of state remedies would also be futile because the Wisconsin court system has shown a manifest unwillingness to address the types of constitutional issues alleged here. In State ex rel. Angela M.W. v. Kruzicki, many of the same constitutional claims brought here were

6

presented to the court, but the Wisconsin Supreme court issued no judgment on constitutional issues whatever. See generally, 561 N.W. 729 (Wis. 1997). The Wisconsin legislature was thus unconstrained by courts of the State in its amendment of Chapter 48 to intrude significantly on the fundamental rights of pregnant women.

**THIS ACTION REPRESENTS A LIVE CASE AND CONTROVERSY**

17. Even if Ms. Beltran were to be released prior to the end of her pregnancy, this would not affect her ability to proceed with this action under § 2241 seeking writ of federal habeas corpus. An action for writ of habeas is proper so long as the habeas petitioner was "in custody" at the time the action was filed. Spencer v. Kemna, 523 U.S. 1, 7 (1998); Carafas v. LaValle, 391 U.S. 234, 238 (1968).

18. Moreover, Ms. Beltran would still be "in custody" for purposes of federal habeas in the event she is released before her expected childbirth in January 2014. This is because Ms. Beltran would be released subject to "restraints not shared by the public generally." Jones v. Cunningham, 371 U.S. 236, 240 (1963). To wit, Ms. Beltran would still be subject to the Washington County Circuit Court's jurisdiction, meaning that: the Washington County Department of Human Services would still be monitoring Ms. Beltran and mandating regular reporting; a guardian ad litem would remain appointed to represent the "unborn child" as against Ms. Beltran and to advance the perceived "best interests" of same; Ms. Beltran would be required to stand trial on a CHIPS petition while she is pregnant which may ultimately be used to terminate her parental rights when her child is born; Ms. Beltran will, on information and belief, be required to comply with involuntary medical examinations, testing, and treatment upon penalty of contempt of court and imprisonment; and Ms. Beltran may be returned to custody at Casa Clare or any other detention facility of the State's choosing at any time. Under these

7

conditions, her release would not be unconditional, Maleng v. Cook, 490 U.S. 488, 491 (1989), and her further incarceration or state control would be no mere "speculative possibility." Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County, CA, 411 U.S. 345, 352 (1973). Accordingly, this remains a live case and controversy that is properly brought as a petition for writ of habeas regardless of any changes in the State's custodial arrangement for Ms. Beltran in the weeks and months before she is due to give birth.

## VENUE

19. Venue properly lies in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 2241(d) because Ms. Beltran is detained at Casa Clare Women's Center, which is located at 201 South Glednridge Court, Appleton, WI, 54914. As to division within this Court, 28 U.S.C. § 1391(b), Milwaukee Division is most appropriate because Washington County is the location of Ms. Beltran's residence, her family, and all of the State actors in this matter having custodial control over Ms. Beltran.

## FACTS AND PROCEDURAL HISTORY RELATING TO MS. BELTRAN'S DETENTION

20. Ms. Beltran learned of her pregnancy on May 15, 2013, after taking a home pregnancy test.

21. On July 2, 2013, Ms. Beltran went to the West Bend Clinic at St. Joseph's Hospital in West Bend, WI, when she was approximately 12 weeks pregnant for a prenatal checkup. At the July 2 prenatal checkup, Ms. Beltran was seen by Physician's Assistant Stephanie Weiss. Ms. Beltran detailed her medical history to Ms. Weiss, including a previous self-perceived issue with Percocet and subsequent use of Suboxone as treatment medication for Percocet dependency, a course of treatment that she had just ended. Ms. Weiss recommended that Ms. Beltran seek a prescription for Suboxone, and Ms. Beltran declined to renew use of Suboxone.

8

22. After leaving the West Bend Clinic on July 2, 2013, Ms. Beltran received a phone call from Ms. Weiss asking Ms. Beltran to return to the clinic to take a urine test. Ms. Beltran complied; her urine tested positive for the presence of buprenorphine metabolites, confirming Ms. Beltran's disclosure that she had used Suboxone for treatment purposes within the past few days.

23. On July 16, 2013, a woman named Jodi Liddicoat appeared at Ms. Beltran's door and identified herself by name, stating that she was a Washington County Social Worker. Ms. Liddicoat stated that she was aware of Ms. Beltran's pregnancy and prior Suboxone use, and she emphatically stated that Ms. Beltran needed to continue taking Suboxone by prescription under the supervision of a physician. Having finished taking Suboxone, Ms. Beltran again declined to resume use.

24. On the morning of July 18, 2013, Ms. Beltran was met at her home by five law enforcement officials. Law enforcement informed Ms. Beltran that they had a warrant for her arrest. She was then read her <u>Miranda</u> rights, handcuffed, placed in the back of a police car, and driven to St. Joseph's Hospital where she was required to submit to an examination by Dr. Erik J. Amoroso. Declaring Ms. Beltran and her pregnancy to be healthy, Dr. Amoroso stated that he would not be performing a drug test and that he considered in-patient treatment to be unnecessary in this case.

25. After being examined, Ms. Beltran was driven by law enforcement to Washington County Jail where she was held for hours before being lead into an adjacent courtroom.

26. She was placed in handcuffs and shackled at the ankles and taken to a court appearance. In the courtroom, Ms. Beltran appeared before Family Court Commissioner Dolores Bomrad. Ms. Beltran asked Commissioner Bomrad to speak to an attorney, and Commissioner Bomrad

9

replied that none would be provided at that time, but that Ms. Beltran would get counsel at the "next" hearing.

27.     Also in the courtroom on July 18, 2013 were Assistant District Attorney (ADA) Mandy Schepper, Ms. Liddicoat, and Deborah Strigenz who had already been appointed as Guardian Ad Litem for the 14 week fetus.  Ms. Beltran was unable to understand much of the proceeding. At the close of the hearing, Ms. Beltran was delivered to Calm Harbor, a halfway house in West Bend, WI.

28.     On July 19, 2013, the following day, Ms. Beltran was retrieved from Calm Harbor by law enforcement.  She was placed in handcuffs and shackled at the ankles before being driven two hours away to Casa Clare, a private women's facility providing certain forms of drug treatment through counseling, though not medical treatment, in Appleton, WI. Upon arrival at Casa Clare, Ms. Beltran was subjected to a urinalysis test that confirmed she was negative for all drugs, including Suboxone metabolites.

29.     Ms. Beltran has been held pursuant to court order at Casa Clare continuously since July 19, 2013.  She has been scheduled to appear for a status hearing on October 7, 2013 and for jury trial on October 29-30, 2013 in the matter of a Child in Need of Protective Services (CHIPS) initiated by petition filed by ADA Schepper concerning Ms. Beltran's pregnancy.  At the time of this filing, Ms. Beltran is approximately 25 weeks pregnant, and has been in State custody for nearly ten weeks.  At the time of her scheduled status conference on October 7, 2013, Ms. Beltran will be 26 weeks pregnant and only 13 weeks from her projected due date.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**

30. The Act is unconstitutionally vague in violation of the Fifth and Fourteenth Amendments guarantee of Due Process. The Supreme Court holds that "[a] statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning[.]" Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926). Section 48.133 permits jurisdiction over fertilized eggs, embryos, and fetuses sufficient to incarcerate a pregnant woman upon finding that she "habitually lacks self-control" to a "severe degree." These terms improperly require speculation as to the conduct that may result in loss of liberty. See Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939). Their vagueness is of the kind that must be expected to "authorize and even encourage arbitrary and discriminatory enforcement." City of Chicago v. Morales, 527 U.S. 41, 56 (1999). Indeed, the flexibility and potential for arbitrary enforcement is embodied by this case, in which, following Ms. Beltran's refusal to adhere to recommendation that she receive prescribed Suboxone treatment, she was arrested and has been detained despite successfully having stopped use of any controlled substance, and in spite of all medical evidence that her fetus was healthy and developing normally.

## SECOND CAUSE OF ACTION

31. The Act provides insufficient procedural safeguards in all circumstances for the possible loss of liberty and is thus in violation of the Due Process Clause of the Fifth and Fourteenth Amendments. United States v. Salerno, 481 U.S. 739, 745 (1987). As measured by the three-prong test of Matthews v. Eldridge, 424 U.S. 319 (1976), the state statute provides insufficient process by failing to guarantee: counsel; knowledge of allegations; an opportunity to present or refute evidence; and by allowing physical detention on a stander of proof considerably lower than the "clear and convincing evidence" burden that is constitutionally required in such cases. Given the strong private interests, the high risk of an erroneous deprivation of personal liberty,

11

and the minimal state and public interests in detaining pregnant women, the Wisconsin statute falls short of the constitutional requirements of due process.

## THIRD CAUSE OF ACTION

32. Ms. Beltran has a constitutional right to liberty, or freedom from bodily restraint, that is at the core of substantive due process freedom. Turner v. Rogers, 131 S. Ct. 2507, 2518 (2011). This right is violated by her arrest and detention.

33. Ms. Beltran has a constitutional right to privacy that encompasses refusal of unwanted medical treatment. Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261 (1990). This right is violated by Ms. Beltran's arrest and civil commitment under the Act in response to her decision not to obey treatment recommendations made by health care providers. It was also violated by the state's action in forcing Ms. Beltran to receive unwanted medical examination.

34. Ms. Beltran's constitutional right to privacy protects the right to become pregnant, seek to carry a pregnancy to term without penalty, or to end a pregnancy without undue burden. Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833 (1992); Carey v. Population Servs. Int'l, 431 U.S. 678 (1977). On its face, § 48.133 penalizes continued pregnancy for a class of women and puts pressure on them to terminate wanted pregnancies if they are to avoid arrest and lengthy detention. This unconstitutionally burdens the right to carry a pregnancy to term and have children. Eisenstadt v. Baird, 405 U.S. 438 (1972); Skinner v. Oklahoma, 316 U.S. 535 (1942). The state law also, as evidenced in this case, effectively bars access to abortion in violation of Casey's "undue burden" requirement by imposing on pregnant women the unwarranted, insurmountable obstacle of confinement without access to abortion services. 505 U.S. at 874.

12

Case 2:13-cv-01101-CNC   Filed 09/30/13   Page 12 of 18   Document 1

35.     Ms. Beltran has a constitutional right to privacy in her confidential disclosures to health care providers and in her medical records.  National Aeronautics and Space Admin. v. Nelson, 131 S.Ct. 746, 756-57 (2011); Ferguson v. City of Charleston, 532 U.S. 67, 76 (2001).  This right is violated by the Act's reliance on communication of these confidential materials by health care providers to law enforcement.

36.     Ms. Beltran has a constitutional right to privacy that protects against "disclosure of personal matters."  Whalen v. Roe, 429 U.S. 589, 599 (1977).  Government inquiry and detention on the basis of privileged and confidential communications between Ms. Beltran and her medical practitioners is precisely what Wisconsin § 48.133 directs, and is in clear violation of this right.

37.     Ms. Beltran has a constitutional right to privacy that includes the right to the sanctity of her familial relationships and the custody of her children.  Troxel v. Granville, 530 U.S. 57, 65 (2000); Moore v. East Cleveland, 431 U.S. 494, 503-504 (U.S. 1977) . The Act is in violation of this right because it permits proceedings to terminate parental rights to a child before a pregnant woman has even given birth to that child.

## FOURTH CAUSE OF ACTION

38.     The Act is in violation of the Fourteenth Amendment guarantee of Equal Protection of the law.  The statute singles out women for special regulation and penalty, requiring them to maintain current and vigilant watch over prospective pregnancy for fear of arrest and commitment for otherwise lawful conduct.  Additionally, it threatens women with imposition of state monitoring agents and a guardian ad litem to supervise and direct under threat of detention numerous details of their personal behavior, health, lifestyle, and pregnancy.  The Equal Protection Clause requires an "exceedingly persuasive justification" for gender-based classifications of this kind.  United States v. Virginia, 518 U.S. 515, 531 (1996).  The Act is not

supported by a sufficient governmental interest, nor is it properly tailored, to survive the requisite heightened scrutiny.

39.     Even if the Act is viewed as a classification as between pregnant and non-pregnant persons, the statute falls short of the Equal Protection Clause because it cannot withstand rational basis review.  Any asserted interest in maternal, fetal, or child health is harmed, not furthered, by a statute that permits arrest and detention of pregnant women.

## FIFTH CAUSE OF ACTION

40.     The Act is a penal statute.  Kansas v. Hendricks, 521 U.S. 346 (1997); Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963).  Accordingly, its application triggers the protections of the Eighth Amendment Cruel and Unusual Punishment Clause.  The Act violates the right to be free from cruel and unusual punishment by authorizing punishment unrelated to any offense and completely disproportionate to any state interest.  United States v. Salerno, 481 U.S. 739, 745 (1987).

41.     The Act is also in violation of the Eighth Amendment because it promotes deliberate indifference to serious medical need.  Farmer v. Brennan, 511 U.S. 825 (1994); Estelle v. Gamble, 429 U.S. 97 (1976).  The state of Wisconsin has shown deliberate indifference to Ms. Beltran's pregnancy and associated need for regular prenatal care and support by arresting her and committing her to a facility that does not provide medication-assisted treatments for opioid drug-related problems; that does not have medical or prenatal care services; and that is at a great distance from her home, family, and medical care providers.

42.     The Act is a status offense in violation of the Eighth Amendment.  Robinson v. California, 370 U.S. 660 (1962).  As manifested by the facts of this case, the Act penalizes the status of pregnancy, making women who are pregnant subject to arrests, detentions, and penalties

14

for their current or past use and/or addiction to drugs or alcohol without any requirement of an *actus reus*. See Powell v. Texas, 392 U.S. 514 (1968).

## SIXTH CAUSE OF ACTION

43. Ms. Beltran has a Fourth Amendment right to be free from unreasonable search and seizure. She has an obvious privacy interest in her body and her confidential medical information. Rakas v. Illinois, 439 U.S. 128 (1978). This interest may be violated by non-consensual searches and disclosure performed by medical personnel acting as government agents. Ferguson v. Charleston, 532 U.S. 67 (2001); Camara v. Municipal Court of San Francisco, 387 U.S. 523 (1967). Ms. Beltran also has a right to be free from warrantless arrest absent probable cause. Because neither arrest nor search of her body and confidential medical files was supported by probable cause, the state's action in this case was in breach of the Fourth Amendment.

## SEVENTH CAUSE OF ACTION

44. Ms. Beltran's arrest and confinement are in violation of her Fifth Amendment right against self-incrimination. The Act transforms Ms. Beltran's confidential medical consultations during pregnancy into a form of custodial interrogation such that Ms. Beltran was required to receive and knowingly waive Miranda warnings. No such warnings were provided.

## EIGHTH CAUSE OF ACTION

45. Ms. Beltran was deprived of her Sixth Amendment right to counsel at all critical stages upon initiation of adversarial proceedings against her. Maine v. Moulton, 474 U.S. 159 (1985).

# **PRAYER FOR RELIEF**

WHEREFORE, Ms. Beltran respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Enter a temporary injunction against enforcement of the Act, securing Ms. Beltran's immediate release and barring any further arrest, detention, coercion, harassment, or state proceeding against her;

(3) Enter a preliminary injunction against enforcement of the Act, shielding Ms. Beltran against arrest, detention, or further state proceedings during the pendency of this habeas corpus litigation;

(4) Enter a permanent injunction against enforcement of the Act, declaring it unconstitutional and void;

(5) Pursuant to 28 U.S.C. § 2243, order Respondents to show cause, within three (3) days of issuing a temporary injunction, why the writ of habeas corpus should not be granted; and set a hearing on this matter after Petitioner has had an opportunity to show cause.

(6) Issue a Writ of Habeas Corpus ordering Respondents to release Ms. Beltran immediately on her own recognizance;

(7) Award Ms. Beltran her costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute; and

(8) Grant such further relief as the Court deems just and proper.

Dated: September ___**27**_____, 2013                    Respectfully submitted,

                                                              _s/ Linda S. Vanden Heuvel_____
                                                             Linda S. Vanden Heuvel
                                                             Bar No.:        WI 1016000
                                                             Vanden Heuvel & Dineen, S.C.
                                                             W175 N11086 Stonewood Drive
                                                             P.O. Box 550
                                                             Germantown, WI 53022-0550
                                                             (262) 250-1976
                                                             linda@vhdlaw.com

                                                *for  -*

| Lynn M. Paltrow | *and* | Sarah E. Burns, Professor of Clinical Law |
|---|---|---|
| Bar No.: NY 1920156 | | Bar No.:        DC 289140, NY 2212413 |
| Farah Diaz-Tello | | Avram Frey |
| Bar No.: NY 4832218 | | Bar No.:        TN 028520 |
| National Advocates for Pregnant Women | | Reproductive Justice Clinic[1] |
| 15 West 36th Street, Suite 901 | | Washington Square Legal Services, Inc. |
| New York, New York 10018 | | NYU School of Law |
| 212-255-9252 | | 245 Sullivan Street, 5th Floor |
| lmp@advocatesforpregnantwomen.org | | New York, New York 10012 |
| | | sarah.burns@nyu.edu |

                                          *Counsel for Petitioner*

---

[1] The Reproductive Justice Clinic is part of the NYU School of Law Clinical Law Program which trains law students in the practice of law through work on actual cases representing clients under attorney faculty supervision.  The Reproductive Justice Clinic specializes in legal and policy work relating to reproductive freedom, equality, and liberty.  The Clinic is part of Washington Square Legal Services, Inc. (WSLS), a not-for-profit entity under which the Law School's clinical law legal practice is conducted.  The Student Practice Order issued by the Supreme Court of New York Appellate Division, First Department, to WSLS authorizes its supervision of law students in the practice of law in the State of New York according to the guidelines set forth in the Order.  As is true with all briefs, publications and reports from clinics and centers at NYU School of Law, this attorney work product does not purport to present the school's institutional views, if any.  All counsel would like to acknowledge and thank the following NYU Law students for their work on this matter: Danielle DeBold, Erin Gallagher, Emily Juneau, Marcella Kocolatos, Katherine Mitchell and Amy Wolfe.