UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

ALICIA BELTRAN,

        Petitioner,

        v.                                  Case No.  13-C-1101

JIM STRACHOTA, MARK D. BENSEN,
WASHINGTON COUNTY CIRCUIT COURT,
JOHN DOE,

        Respondents.

---

### DECISION AND ORDER GRANTING MOTIONS TO DISMISS (DOCS. 34, 42) AND DISMISSING CASE

According to Alicia Beltran's petition in this case,[1] when she was about three and months pregnant a state-court commissioner ordered her to inpatient treatment for drug abuse.  The commissioner based the order on Wis. Stat. § 48.133, which provides that a state court can exercise jurisdiction over a pregnant woman and order treatment if the pregnant woman "habitually lacks self-control in the use of alcohol beverages, controlled substances or controlled substance analogs, exhibited to a severe degree, to the extent that there is a substantial risk that the physical health of the unborn child, and of the child when born, will be seriously affected or endangered unless the expectant mother receives prompt and adequate treatment for that habitual lack of self-control."

After learning she was pregnant, Beltran went to a clinic for a prenatal checkup and detailed her medical history for a physician's assistant.  (Doc. 1 at 8.)  That medical history

---

[1]The following facts are taken from her petition.  The court takes no position as to whether the facts are true.

included Beltran's report that she had a prior issue with Percocet and had just finished taking Suboxone to end her Percocet dependency. The physician's assistant recommended that Beltran submit to a prescribed regimen of Suboxone, but Beltran refused. (*Id.*) Apparently the physician's assistant reported Beltran's drug use to authorities. About two weeks after Beltran's visit to the clinic, five law enforcement officials arrived at her door with a warrant for her arrest. She was handcuffed, placed in a police car, and driven to a hospital, where she was required to submit to a doctor's examination. The doctor declared Beltran and her pregnancy to be healthy. (*Id.* at 9.) Nevertheless, Beltran was held in the Washington County Jail for hours until she was taken, in handcuffs and shackles, to a courtroom. (*Id.*)

Beltran asked the presiding court commissioner if she could speak to an attorney. The commissioner stated that none would be provided but that Beltran would get counsel at the next hearing. (*Id.* at 9-10.) The district attorney of Washington County had filed a child-in-need-of-protective-services (CHIPS) proceeding. (*See id.* at 10.) At the end of the hearing, Beltran was taken to a halfway house. The following day she was transported in handcuffs and shackles to the Casa Clare Treatment Center, a private women's facility providing drug treatment through counseling. Upon arrival at Casa Clare, Beltran was subjected to a urinalysis test, which was negative for all drugs, including Suboxone. (*Id.*)

Beltran remained at Casa Clare for over two months. She then filed this habeas case under 28 U.S.C. § 2241. Four days after Beltran filed this case seeking a temporary restraining order and preliminary injunction to gain her release and a permanent injunction against enforcement of Wis. Stat. § 48.133, a Washington County Circuit Court judge

2

allowed her release from Casa Clare with restrictions. After this court scheduled a status conference (but before the conference took place), the Washington County District Attorney withdrew the CHIPS petition, the state-court case was dismissed, and all restrictions imposed by the Washington County Circuit Court expired.[2] (*See* Doc. 39 at 1; Doc. 40 at 1.) Beltran's projected due date was approximately in January 2014. (*See* Doc. 1 at 10.)

Beltran filed this habeas case against Washington County District Attorney Mark Bensen; the County's director of human services, Jim Strachota; the Washington County Circuit Court; and the executive director of Casa Clare. After Beltran was released from Casa Clare this court dismissed all § 2241 claims against Casa Clare's executive director because he could no longer be considered her physical custodian for § 2241 purposes (if he ever was). Further, the court denied Beltran's motions for a temporary restraining order and preliminary injunction.

The Washington County Circuit Court, Strachota, and Bensen have moved for dismissal under Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(6), and ©. Bensen argues that he is not a proper respondent because he was not and is not Beltran's custodian, the case is moot because all CHIPS proceedings were dismissed, and Beltran failed to exhaust her state remedies. Strachota and the Washington County Circuit Court also argue mootness and failure to exhaust. Moreover, they contend that an abstention doctrine applies and the state court is not a suable entity.

---

[2] Respondents state that the CHIPS case was dismissed because the assistant district attorney asked for dismissal in light of Beltran's successful completion of treatment, not because of this federal case. (Doc. 49 at 2; Doc. 52 ¶ 3.) Because this case is at the motion-to-dismiss stage the court has inferred some relationship between dismissal of the state-court case and the proceedings in this case. But the reason for the CHIPS dismissal is actually immaterial for purposes of this decision.

Only the mootness issue under Rule 12(b)(1) needs to be addressed. Regardless, if Beltran's allegations are true, what happened to her is extremely disturbing. But, she is no longer in custody and no collateral consequences attend her.

A motion to dismiss under Rule 12(b)(1) challenges the court's jurisdiction over the subject matter related in the complaint. *See* Fed. R. Civ. P. 12(b)(1). The party seeking to exercise jurisdiction bears the burden of establishing it. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.,* 541 U.S. 774 (2004).

For any motion to dismiss, all well-pleaded facts in the complaint are assumed to be true, and all such facts, as well as the reasonable inferences therefrom, are viewed in the light most favorable to the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). However, for a motion to dismiss under Rule 12(b)(1) the court may look beyond the complaint to evidence that calls the court's jurisdiction into question. *Sutton v. Napolitano*, 986 F. Supp. 2d 948, 953 (W.D. Wis. 2013); *see Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (finding that when facts place the district court on notice that jurisdiction may not exist due to lack of standing the court may consider evidence beyond the pleadings). Here, the court considers the undisputed release of Beltran from custody, the dismissal of the CHIPS proceeding, and references to Beltran's due date that indicate that her pregnancy must have ended about nine months ago.

Beltran filed this case under 28 U.S.C. § 2241, and a basic requirement of that habeas corpus statute is that the petitioner be "in custody." *Rivas-Melendrez v.*

*Napolitano*, 689 F.3d 732, 738 (7th Cir. 2012). However, if custody exists at the time a petition is filed, the custody requirement is satisfied. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). For purposes of the present motions no one disputes that Beltran was in custody at the time she filed this case and that this court acquired subject matter jurisdiction at that time.

Nevertheless, Beltran's subsequent release from custody may have caused her case to become moot. *See id.* Article III, section 2 of the U.S. Constitution provides federal courts with jurisdiction over "cases" and "controversies." The usual rule is that an actual case or controversy must exist at all stages of the action, including during any appeal or certiorari review. *Spencer*, 523 U.S. at 7; *Roe v. Wade*, 410 U.S. 113, 125 (1973). The case-or-controversy requirement means that "throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer*, 523 U.S. at 7 (quoting *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990)). If the controversy evaporates, the case is moot; the court loses jurisdiction over it and must dismiss. "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009).

Habeas petitions are most often brought by those convicted of crimes, and an incarcerated person or parolee's challenge to the validity of a conviction constitutes a case or controversy because incarceration and restrictions during parole or supervision

constitute "concrete injur[ies], caused by the conviction and redressable by invalidation of the conviction." *Spencer*, 523 U.S. at 7. But even for those convicted of crimes, once the custody or restriction has expired "some 'collateral consequence' of the conviction" must exist for a habeas suit to avoid mootness. *Id.* And while a criminal conviction is generally presumed to have continuing collateral consequences,[3] other proceedings, such as parole revocations, do not. *Id.* at 8, 14.

Beltran admits that she is no longer subject to any liberty restraints. (Doc. 44 at 3.) She was not convicted; nor was she subject to any civil judgment in the CHIPS case. So no presumption of collateral consequences exists and she must demonstrate them to obtain relief under § 2241. *See id.* But she has failed to so demonstrate. Collateral consequences consist of restrictions such as the inability to vote or serve as a juror. *See Carafas v. LaVallee*, 391 U.S. 234, 237 (1968). A simple possibility of future restrictions or outcomes—such as an increased future sentence for the next crime committed, which is contingent upon a person's violation of the law, getting caught, and being convicted—is too speculative to constitute a collateral consequence. *See Spencer*, 523 U.S. at 15.

Beltran contends that she is subject to a collateral consequence because she "may suffer loss of parental rights at the State's initiative" as a result of her previous arrest and detention under § 48.133. (Doc. 44 at 11.) She argues that a guardian ad litem may initiate proceedings for termination of parental rights and the court would consider past drug use during that case. But these occurrences are mere possibilities, not probabilities

---

[3]The Court in *Carafas v. Lavallee*, 391 U.S. 234, 237 (1968), recognized some of the concrete consequences of a conviction to be the inability to engage in certain businesses, to serve as an official, to vote in elections, and to serve as juror. Because of these consequences a habeas petition challenging a judgment of conviction has a substantial stake that may survive service of the sentence imposed. *Id.*

or certainties, and mere possibilities are not enough to constitute collateral consequences. *Spencer*, 523 U.S. at 14. Beltran has presented nothing suggesting that a dismissed § 48.133 CHIPS proceeding will reasonably likely result in a second CHIPS proceeding to terminate her parental rights over her child after its birth. Her suggestions that she may be a party to future custody proceedings regarding her child is speculative and is not enough to constitute a case or controversy.

Beltran points to the doctrine that a case remains a live case or controversy for purposes of federal court jurisdiction if the matter is "capable of repetition, yet evading review." *Spencer*, 523 U.S. at 17 (internal quotation marks omitted). The doctrine applies only in exceptional circumstances. *Id.* Such a situation exists when "'(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Id.* (alteration in original) (quoting *Lewis*, 494 U.S. at 481).

Beltran contends that her situation is one that will evade review because of the short duration of pregnancy or treatment and there is a reasonable expectation that respondents' conduct will occur again the next time she is pregnant. She says the present case is "a classic scenario for application" of the evading-review standard and points to *Roe*. Indeed, although Roe was no longer pregnant at the time her case reached the U.S. Supreme Court, the end of her pregnancy did not moot her case. 410 U.S. at 125. As the Court stated,

> when, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law

7

> should not be that rigid. Pregnancy often comes more than once to the same woman, and in the general population, if man is to survive, it will always be with us. Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be "capable of repetition, yet evading review."

*Id.*

Though Beltran's case meets the short-duration requirement, this court is unpersuaded that a reasonable expectation exists that respondents will subject her to the same conduct in the future. It is possible that Beltran may become pregnant again. If that occurs, she will have the same history of Percocet use. But that does not mean she will likely be arrested and forced into future inpatient treatment. The Percocet use will be further back in her history, and her drug use or nonuse between pregnancies will likely make a great difference. Beltran would have to see a doctor or physician's assistant who opines that her drug use could harm the fetus and then reports her to authorities. Those authorities would have to choose to prosecute a CHIPS case respecting the matter, and a court commissioner or judge would have to find that Wis. Stat. § 48.133 applies.

Beltran submits that because her drug history is part of her medical records, future providers, "taking stock of Petitioner's pregnancy, *might* begin the cycle anew by alerting the county Human Services Department." (Doc. 44 at 7 (emphasis added).) The word "might" is an important one. The situation is possible, but the court is unpersuaded that it is reasonably likely. And whether authorities, *if* they received a report from Beltran's future medical provider, would pursue another CHIPS case against Beltran under § 48.133 is another layer of speculation.

This case differs from *Roe*. The Texas abortion statute affected a pregnant woman from the moment of conception. But § 48.133 will have no future effect on Beltran unless

several facts happen just right: she becomes pregnant and is considered a risk to herself or her fetus in the eyes of a health care provider, the provider reports her to authorities, a district attorney starts a CHIPS proceeding, and a judge finds her to lack self-control to an extreme degree. This possibility is too speculative to constitute an ongoing controversy. Nor is the case before this court like *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003), in which the § 2241 petitioner had been given a reprieve from detention by the Immigration and Naturalization Service but remained subject to revocation of parole at any time for any reason. Because of the dismissal of Beltran's CHIPS case, and certainly after the end of her pregnancy, Beltran faces no threat of being retaken into custody.

The present case resembles *Weinstein v. Bradford*, 423 U.S. 147 (1975), in which a parolee's complete release from supervision mooted his claim that the parole board denied his constitutional rights as a consequence of the procedure it used to determine parole eligibility. Said the Court: "While petitioners will continue to administer the North Carolina parole system with respect to those who at any given moment are subject to their jurisdiction, there is no demonstrated probability that respondent will again be among that number." *Id.* at 149. Here, there is no demonstrated probability that Beltran will again be subject to a CHIPS proceeding under Wis. Stat. § 48.133.

Beltran adds that the prior case has not been expunged, that it may be used against her, and that she has received no agreement from the State of Wisconsin not to reinstitute the CHIPS proceeding or enforce the statute against her in the future. But she has failed to establish anything regarding the effect that a dismissed CHIPS petition (as opposed to a judgment) has on future proceedings. And even if some effect would exist, whether there will be any future proceedings remains speculative.

9

Moreover, though the *Spencer* Court discussed the petitioner's capable-of-repetition-yet-evading-review argument, it did so without mentioning how that doctrine operates in a habeas case. Roe, for instance, filed her claims under 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983, seeking a declaratory judgment in a civil rights case. *See Roe v. Wade*, 314 F. Supp. 1217, 1219 n.1 (N.D. Tex. 1970). The federal courts could award her compensatory or declaratory relief notwithstanding the end of her pregnancy. But the form of relief in a habeas case differs substantially: release rather than money, an injunction, or declaration.

Consideration of the statutory basis for this case confirms its mootness. Although Beltran referenced 28 U.S.C. § 2201 (the declaratory judgment statute) in her petition (Doc. 1 at 4), the underlying basis for the relief she has requested is § 2241, not § 1983. Habeas is the proper vehicle for relief if the person "is seeking to 'get out' of custody in a meaningful sense." *Pischke v. Litscher*, 178 F.3d 497, 499-500 (7th Cir. 1999). A valid habeas case existed when Beltran filed the case—she was being held at Casa Clare. And a case or controversy may have continued immediately after her physical release—because the court imposed conditions on her while the CHIPS proceeding was pending. *See, e.g., Hensley v. Municipal Court, San Jose-Milpitas Judicial Dist., Santa Clara Cnty.*, 411 U.S. 345, 345, 351 (1973) (holding that a person released on his own recognizance is in custody within the meaning of federal habeas statutes because he is subject to restraints not shared by the public generally and is obligated to appear at any time without notice). But since the dismissal of the CHIPS proceeding, there has been no custody from which to release Beltran and no custodian to whom the court would direct an

order. "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95 (1973). If granted, the writ is directed to the jailer, and the court relieves the petitioner "by compelling the oppressor to release his constraint." *Id.* at 495 (internal quotation marks omitted). Although physical release from custody is not the only relief available in habeas, *Carafas*, 391 U.S. at 239; *see* 28 U.S.C. § 2243 (allowing the court to "dispose of the matter as law and justice require"), there must be something to order release *from*, and there is nothing in this case. Unlike someone who is still challenging a conviction after fully serving a sentence, Beltran is not subject to any concrete effects of the dismissed CHIPS proceeding or her custody.

Beltran contends that in deciding the capable-of-repetition issue, this court should consider the likelihood of repetition for the class affected by the statute. (Doc. 44 at 5, 7-8.) She suggests this in other statements as well: "Bensen and Strachota must show that Petitioner *and others in her position* are in no danger of enforcement of the Act" (Doc. 44 at 4) (emphasis added); "[t]his analysis . . . reflects the ultimate importance of federal review of State laws of broad impact" (*id.* at 8); "Petitioner does indeed represent a significant number of women who may be – and likely have been – affected by the challenged Act" (*id.* (footnotes omitted)). However, the court is unpersuaded that class concerns are appropriately considered in a habeas (as opposed to a § 1983) case because of the individual nature of each petitioner's custody. This *habeas* case does not provide a forum for considering application of the statute to others or its constitutionality as a

general matter, because the appropriate relief in this case would be limited to an order for *Beltran*'s release from some type of custody or its lingering effects.

The court acknowledges that the Wisconsin Supreme Court retained jurisdiction over an appeal in a state-law habeas case brought by an expectant mother held for drug treatment under Wis. Stat. §§ 48.13 and 48.19. However, the Wisconsin Supreme Court recognizes an exception for mootness when "the issues presented are of great public importance," as well as when the issue is capable of repetition yet evading appellate review. *State ex rel. M.W. v. Kruzicki*, 209 Wis. 2d 112, 120 n.6, 561 N.W.2d 729 (1997). Although the state high court found the *M.W.* case met both standards, it provided no analysis as to why. Moreover, state habeas requirements may differ from federal ones. Thus, the case is not persuasive.

Beltran contends that voluntary cessation by the defendants of their allegedly violative conduct did not moot the case. A defendant cannot automatically moot a case by ending his unlawful conduct once sued; if so, he could simply pick up where he left off after the case was dismissed. *See Already, LLC*, 133 S. Ct. at 727. Under "voluntary cessation" caselaw, if a defendant ceases violative conduct in response to the federal case being filed, the federal case is moot only when the party claiming mootness meets "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC,* 133 S. Ct. at 727 (internal quotation marks omitted). This test is essentially the flip side of the capable-of-repetition-yet-evading-review test, with the burden shifted. But even with the burden shifted to respondents here, the court is convinced that the allegedly wrongful behavior is not reasonably expected to recur. Beltran's pregnancy to which the CHIPS proceeding applied

ended at least eight or nine months ago. And, as discussed above, her being taken into custody and forced into treatment again, even if she experiences another pregnancy, is only a remote possibility.

This court takes no position regarding whether Beltran may bring a § 1983 civil rights case or the ultimate merits of any such case.[4] The case before this court was brought under a § 2241, and as such it is now moot. Therefore,

IT IS ORDERED that the motions to dismiss (Docs. 34, 42) are granted and this § 2241 case is dismissed, without prejudice regarding the substance of Beltran's claims.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2014.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

---

[4]Beltran has not asked for conversion of the case. Moreover, conversion is rare and generally is an option only for pro se litigants who mislabel their lawsuits. *See Glaus v. Anderson*, 408 F.3d 382, 388 (7th Cir. 2005).